THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ALLEN CRUZ, Defendant-Appellant.

First District (3rd Division) No. 1—88—2053

Opinion filed April 18, 1990.

Nidal Z. Zayed & Associates, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Gael O'Brien, and Patrick J. Finley, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

The defendant, Allen Cruz, was found guilty following a jury trial of committing the offenses of attempted murder, aggravated battery, armed violence predicated on aggravated battery, and aggravated battery while using a deadly weapon, in connection with the shooting of Marisol Gonzales. Judgment was entered on the verdict for attempted murder, and the defendant was sentenced to serve 10 years' imprisonment in the Illinois Department of Corrections. On appeal, the defendant contends: (1) there were numerous errors which deprived him of a fair trial and which should be noticed by this court under the plain er-

ror rule; (2) he was improperly convicted of multiple offenses for the same act; (3) his sentence is excessive; (4) the trial court erroneously instructed the jury on all four counts because the jury was misled into believing there were four separate crimes committed; (5) he was not proved guilty beyond a reasonable doubt because there was insufficient evidence for proper identification; and (6) he was not proved guilty beyond a reasonable doubt of attempt (murder) because there was insufficient evidence to establish intent.

On the evening of Friday, December 5, 1986, 16-year-old Marisol Gonzales and her niece, 14-year-old Melissa Echevarria, went to a disco at Maple Lanes Bowling in Chicago. There they met a friend of Marisol's, 20-year-old Israel Hernandez, and someone named Carlos. They danced and consumed some alcoholic beverages until the early morning hours of December 6, at which time Hernandez agreed to drive the girls home. After they left, the girls requested that they stop somewhere so they could use a rest room. Hernandez decided to take them to his father's tavern located at North Avenue and Monticello so that they could use the facilities there. Once inside, Carlos decided to leave the group and departed. Marisol entered the ladies room first, and Hernandez returned to his car to wait for the girls. Marisol then left and told Melissa she would wait for her in Israel's car. After Marisol entered Hernandez' car, Hernandez noticed a Buick LaSabre slowly approach and pull up along side his car. The testimony reveals that Hernandez' vehicle was parked on Monticello, which is a one-way street going north. The Buick pulled up along side the passenger side, indicating that Hernandez had parked on the west side of Monticello and was seated closest to the curb. The windows on the Buick were tinted, concealing the occupants until a window was rolled down. Someone leaned out the window, smiled, and then pointed a handgun at Hernandez and Gonzales. Israel alerted Marisol and pushed her down on the seat, lying on top of her as a shield. Six shots were fired into the car, and then the Buick disappeared. Marisol received one bullet in her side.

Later that day, Hernandez flagged down an unmarked police car while walking west on North Avenue and spoke to Officer Guevara. Hernandez asked Guevara if they had captured the person who shot Gonzales. Officer Guevara advised Hernandez that he was unfamiliar with the investigation but drove Hernandez to the station after Hernandez stated that he thought the gunman was a member of a street gang called the "People" and that he could identify the gunman if he examined the police photographs. Hernandez subsequently identified the defendant, Allen Cruz, upon seeing his photograph in a

book containing members of the "People" street gang.

▮▮ The defendant first argues that his conviction must be reversed because there were numerous errors committed at trial. Conceding that these errors have been waived due to the the trial counsel's failure to object at trial or raise them in his post-trial motion, he urges the court to apply the plain error rule. A defendant must make a timely objection at trial and again raise the issue in a post-trial motion in order to preserve the issue for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) A failure to comply with either requirement waives review of the issue. (*People v. Jackson* (1981), 84 Ill. 2d 350, 358, 418 N.E.2d 739.) The waiver rule is not absolute, however, as Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)) permits a court to take notice of errors not properly preserved for review where substantial rights are affected. The plain error rule may be invoked when the evidence is closely balanced or the error is of such magnitude that the defendant is denied a fair trial. (*People v. Lucas* (1981), 88 Ill. 2d 245, 251, 430 N.E.2d 1091.) The rule does not, however, require a court to consider all errors involving substantial rights whether or not they have been brought to the trial court's attention. (*Jackson*, 84 Ill. 2d at 359.) The claimed errors include references to gang affiliation and a photograph of the defendant in a police mug book, remarks made during the prosecution's opening statement and closing argument, and an unsolicited remark made by the State's identification witness pertaining to past bad acts of the defendant. We have read the record and do not consider the evidence to be closely balanced. Nor do we regard the alleged errors to be of such magnitude that the defendant was denied a fair trial. Thus, the points raised by the defendant are waived.

▮▮ Our refusal to apply the plain error rule is also due in part to the defendant's failure to cite any authority in contending that he has been denied a fair trial. The defendant's brief contains only excerpts from the transcript and bare assertions. Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)), which is made applicable to criminal appeals pursuant to Supreme Court Rule 612 (107 Ill. 2d R. 612), requires that arguments in support of issues raised on appeal contain the contentions and the reasons in support thereof with citations to authorities. Points raised but not properly briefed are waived. (*People v. Adams* (1969), 109 Ill. App. 2d 385, 388, 248 N.E.2d 748.) As one court explained,

> "If the case is not properly presented and the court is not given the benefit of precedents there is a danger of a decision being rendered that will not be in harmony with the weight of

authority. It is the duty of attorneys practicing in this court to present to the court the authorities supporting their views and to assist the court in reaching a correct conclusion.

\* \* \*

Reviewing courts are entitled to have the issues clearly defined, to be cited pertinent authorities and are not a depository in which an appellant is to dump the entire matter of pleadings, court action, argument and research as it were, upon the court." *People v. Ortiz* (1980), 91 Ill. App. 3d 466, 475, 414 N.E.2d 1072.

■■ ■ The defendant next contends that he was improperly convicted of multiple offenses for the same act. He urges this court to vacate his conviction for attempted murder, contending it is a less serious offense than armed violence. He further requests this court to vacate his convictions for the two counts of aggravated battery. Where the same physical act constitutes more than one offense, it is proper to enter judgment and sentence only on the most serious of the offenses. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477; *People v. King* (1977), 66 Ill. 2d 546, 363 N.E.2d 938.) The defendant, however, was only convicted of one offense, as judgments were never entered on the guilty verdicts for armed violence and the two counts of aggravated battery. The record clearly shows that Cruz was convicted only of attempted murder. In the absence of a judgment formerly entered or sentence imposed, there is no "conviction." (Ill. Rev. Stat. 1985, ch. 38, par. 2—5.) A jury verdict does not equal a judgment of conviction. (*People v. Lashmett* (1984), 126 Ill. App. 3d 340, 345, 467 N.E.2d 356.) Thus, insofar as the rule against multiple convictions is concerned, the trial judge was in compliance with *King*. There is no need to reach the question of which is the more serious offense.

■■ ■ The defendant argues next that his sentence is excessive, and he asks that it be reduced. The offense of attempted murder is a Class X felony carrying a sentence from 6 to 30 years imprisonment. (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 1005—8—1(3).) The trial judge sentenced the defendant to 10 years in the Department of Corrections. Reviewing courts have the authority to reduce sentences under Rule 615(b)(4). (107 Ill. 2d R. 615(b)(4).) A reviewing court cannot, however, reduce a sentence unless there has been an abuse of discretion by the trial judge. (*People v. La Pointe* (1982), 88 Ill. 2d 482, 492, 431 N.E.2d 344.) The trial judge's decision regarding sentencing is entitled to great deference and weight (*La Pointe*, 88 Ill. 2d at 492-93), and the reviewing court cannot substitute its own judgment merely

because it would have balanced the appropriate factors differently. (*People v. James* (1987), 118 Ill. 2d 214, 228, 514 N.E.2d 998.) The sentencing hearing revealed a criminal record consisting of convictions for possession of stolen automobiles, unlawful use of a weapon, criminal damage to property, and possession of cannabis. The defendant asserts that the trial judge did not give adequate consideration to the defendant's rehabilitative potential. The defendant's last prior conviction was in 1985, and the testimony shows he had been employed at his father's tire shop for four years, earning $100 a week. We find no abuse of discretion.

■ The defendant next contends that it was erroneous to instruct the jury on all four counts because the instructions on the multiple offenses misled the jury into believing the defendant was charged with four separate crimes. In support of this proposition, the defendant cites *People v. Tyllas* (1981), 96 Ill. App. 3d 1, 420 N.E.2d 625. In *Tyllas*, the court was presented the same issue but refused to address it on the ground that even if the contention were valid, it was harmless error. (*Tyllas*, 96 Ill. App. 3d at 6.) The defendant recognizes that *Tyllas* did not address the issue, but cites the decision in an apparent effort to demonstrate that his contention has merit as he had no other authority for this proposition. He concedes that the issue is waived as it was not raised in his post-trial motion, but urges the court to consider the issue under the plain·error rule. We do not believe the plain error rule is warranted here, and, in any event, the defendant's argument is without merit. See *People v. Harris* (1986), 146 Ill. App. 3d 632, 637, 497 N.E.2d 177.

■ Next, the defendant argues that he was not proved guilty beyond a reasonable doubt because the identification evidence was insufficient. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) When a defendant challenges the sufficiency of the evidence, a reviewing court must view the evidence in the light most favorable to the prosecution and then determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261.

■ ■ The law is clear that a single witness' identification of an accused is sufficient to sustain a conviction provided that the witness had an adequate opportunity to observe the accused and the witness is credible. (*People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317.) In evaluating identification testimony, the following factors are considered: (1) the opportunity the witness had to view the criminal at

the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation. (*Slim*, 127 Ill. 2d at 307-08.) An identification need not be based on perfect conditions or on a prolonged period of time for observation for the identification to be valid. *People v. Crawford* (1980), 90 Ill. App. 3d 888, 891, 414 N.E.2d 25.

 Hernandez testified that the gunman was seated in the passenger side of the Buick and that the driver, whose face he could not see, had leaned back in order to make room for the gunman. Thus, according to Hernandez, the criminal fired the weapon through the driver's window while seated in the passenger seat. Hernandez stated that the gunman leaned over and pointed a big chrome gun out the window when he fired. Hernandez admitted on cross-examination that he was able to view the gunman for only a few seconds before taking evasive action to protect himself and Marisol. Hernandez further testified, however, that the area was illuminated by a street lamp a couple feet away on his side of Monticello and by a lighted store sign across the street. Hernandez also testified that the Buick was only four feet away when the vehicle pulled up next to his car.

Despite the fact that the Buick's appearance was sudden, Hernandez' level of attention must have been high, as his description of the shooting was detailed and he was able to take quick evasive action.

As to the third factor, there is not much evidence to assist the court as Hernandez never gave a prior physical description of the gunman with which this court can compare to Cruz. Hernandez testified that he had been walking west on North Avenue to a friend's home in order to obtain a ride to the police station when he spotted Officer Guevara in an unmarked squad car. The defendant asserts that Hernandez' identification lacks credibility because Hernandez stated he gave a description of the criminal to Guevara while Guevara testified that he was not provided with a description. A reasonable explanation for this discrepancy could be that what Hernandez meant by giving a description was his statement that he could identify the gunman who he believed to be a member of the "People." Hernandez never testified that he provided Guevara with any physical characteristics of the criminal. Officer Guevara never asked Hernandez to describe the offender, and Hernandez never offered a description except that he thought the assailant was a member of the "People" and that he could identify him. Generally, discrepancies and omissions as to physical characteristics are not fatal and affect only the weight to be

given to identification testimony. (*Slim*, 127 Ill. 2d at 308.) Therefore, it follows that the failure to provide any description, at least when one is not solicited, should affect only the weight of the evidence.

Hernandez displayed a reasonable degree of certainty that his identification of the accused was correct. He examined three books of photographs before pointing out Cruz as the criminal. He subsequently identified Cruz during a lineup, and he never displayed uncertainty.

The length of time between the crime and the first identification confrontation was short, as Hernandez identified Cruz from the police photographs less than a day following the incident. He then identified Cruz in a lineup the following day.

Hernandez' credibility is questionable since, as a rival gang member, Hernandez could have been biased or even motivated to lie. Hernandez' credibility is also questionable because he first testified that he had never seen the gunman before the shooting, and then later contradicted himself when he testified that he had seen Cruz drive around the neighborhood with other gang members looking for trouble. Such infirmities, however, go to the weight of the identification evidence. (*Collins*, 106 Ill. 2d at 261-62; *People v. Dean* (1987), 156 Ill. App. 3d 344, 352, 509 N.E.2d 618.) After considering the foregoing factors, we conclude that a rational trier of fact could have found Cruz guilty beyond a reasonable doubt.

■■ The defendant next contends, assuming *arguendo* that he was the assailant, that the State failed to prove beyond a reasonable doubt that he intended to commit murder. Specific intent to kill must be established beyond a reasonable doubt in order to convict for attempted murder. (*People v. Anderson* (1982), 108 Ill. App. 3d 563, 566, 439 N.E.2d 65.) Such intent can be inferred from the surrounding circumstances including the character of the assault and the use of a deadly weapon. (*Anderson*, 108 Ill. App. 3d at 566.) The defendant, relying upon *People v. Trinkle* (1976), 40 Ill. App. 3d 730, 353 N.E.2d 18, argues that it cannot be inferred that the shooter intended anything more than damage to Hernandez' vehicle. In *Trinkle*, the defendant, who was angry for being refused service by a bartender, fired a shot at the building. The bullet penetrated the door and wounded a patron. The court reduced the defendant's conviction for attempted murder to aggravated battery because the court found there was, *inter alia*, reasonable doubt that the defendant intended to kill, as the defendant was unaware that the patron had been standing behind the door and because the defendant's· actions were directed, not against any person, but against a building. The defendant main-

tains that intent to kill cannot be inferred because when Hernandez and Gonzales first noticed the gun pointed at them, they were in clear view of the gunman and, yet, the gunman did not fire. The defendant asserts that had the assailant intended to kill, at least one of the six bullets fired would have struck the passenger window. Therefore, the defendant argues that the assailant intended only to inflict damage upon Hernandez' vehicle. The defendant further asserts that it is unreasonable to infer that the shooter knew that a bullet could penetrate the car door or that the bullet could retain the requisite velocity necessary to kill a victim after passing through a car door. The State responds that the defendant's argument fails to take into account that at the time the weapon was discharged into the passenger door, Hernandez and Gonzales were hidden below the window.

 We agree with the State. A rational trier of fact could infer that the assailant aimed his weapon at the car door because Hernandez and Marisol were lying down in the car, hidden from view. Further, there is no evidence that the gunman made a conscious choice not to fire when Israel and Marisol were still in clear view. It is equally plausible that the assailant merely hesitated or did not have enough time to take aim before Hernandez pushed Marisol down onto the seat. The court also disagrees with the defendant's assertion that it is unreasonable to infer that the gunman knew a bullet could penetrate a car door and kill a victim. Accordingly, the court finds that a rational trier of fact could have found the requisite intent beyond a reasonable doubt.

The judgment of the circuit court is affirmed.

Judgment affirmed.

FREEMAN and RIZZI, JJ., concur.